IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>JOHN MILLMAN; ELIZABETH MILLMAN; and STEVEN HANNAH,<br><br>Defendants. | Case No. 4:18-cv-00015-TMB<br><br>ORDER ON MOTIONS FOR SUMMARY JUDGMENT (DKTS. 42, 44, 46) |
| MARK BROCHU,<br><br>Intervenor. | |

## I. INTRODUCTION

The matter comes before the Court on Plaintiff State Farm Fire and Casualty Company's ("State Farm") Motion for Summary Judgment,[1] and Intervenor Mark Brochu's Cross-Motion for Summary Judgment[2] and Motion for Summary Judgment[3] (collectively, the "Motions for Summary Judgment" or the "Motions"). The Motions for Summary Judgment were fully briefed by State Farm and Brochu;[4] Defendants John Millman ("J-Millman"), Elizabeth Millman ("E-

[1] Dkt. 42.

[2] Dkt. 44.

[3] Dkt. 46.

[4] *See* Dkt. 42 (State Farm's Motion for Summary Judgment); Dkt. 43 (State Farm's Memorandum); Dkt. 44 (Brochu's Response in Opposition and Cross-Motion for Summary Judgment); Dkt. 45 (State Farm's Errata re: Motion for Summary Judgment); Dkt. 46 (Brochu's Motion for Summary Judgment); Dkt. 47 (Brochu's Memorandum); Dkt. 56 (State Farm's Response in Opposition to Brochu's Cross-Motion for Summary Judgment and Motion for Summary Judgment and Reply to

Millman"), and Steven Hannah did not file a response to the Motions. State Farm requested oral argument,[5] which the Court granted,[6] and the Court heard oral argument on the Motions for Summary Judgment on July 17, 2019.[7] For the reasons stated below, State Farm's Motion for Summary Judgment at docket 42 is **GRANTED**, and Brochu's Cross-Motion for Summary Judgment at docket 44 and Motion for Summary Judgment at docket 46 are **DENIED.**

## II. BACKGROUND

This is an action for declaratory judgment initiated by State Farm against J-Millman, E-Millman, and Hannah.[8] State Farm is seeking a declaratory judgment regarding its duty to defend and indemnify—under a Renters Policy maintained by E-Millman, and under a Homeowners Policy maintained by J-Millman[9]—in relation to a tort action currently before the Alaska state court.[10] Brochu—the plaintiff in the state tort case—has since successfully intervened in this matter, and has opposed State Farm's request for declaratory judgment.[11] The evidentiary record is largely undisputed by the parties and is summarized below.

---

Brochu's Response in Opposition to State Farm's Motion for Summary Judgment); Dkt. 58 (Brochu's Reply to State Farm's Response in Opposition to Brochu's Cross-Motion for Summary Judgment and Motion for Summary Judgment).

[5] Dkt. 59 (Motion for Hearing).

[6] Dkt. 60.

[7] Dkt. 64.

[8] Dkt. 1.

[9] *Id.* at 4–7.

[10] *Id.* at 3. *See also* Dkt. 1-1.

[11] *See* Dkt. 35 (Minute Order granting Motion for Permissive Intervention). *See also* Dkt. 25 (Motion for Permissive Intervention); Dkt. 26 (Memorandum).

*A. Pre-Incident Background*

The matter arises from an incident involving Brochu, Hannah, and the residential property located at 1304 Grenac Road in Fairbanks, Alaska (the "Property").[12] J-Millman owned the Property, and allowed his daughter, E-Millman, along with her four dogs, to rent and reside at the Property while she attended veterinary school in Fairbanks.[13]

One of E-Millman's neighbors was Brochu, who lived in a yurt adjacent to the Property.[14] Prior to Hannah's arrival, E-Millman had several encounters with Brochu, including occasions where Brochu would arrive on the Property while intoxicated seeking to socialize with E-Millman.[15] As a result of these encounters, E-Millman came to understand that Brochu was upset that his partner, who previously owned the Property, had sold the cabin to J-Millman.[16] Despite these encounters, E-Millman's dogs and Brochu's dogs were permitted to wander freely between the Property and Brochu's property.[17]

At some point in the winter of 2015 - 2016, E-Millman posted "No Trespassing" signs on her property to deter Brochu's acquaintances from wandering onto her property; this was because she had uncomfortable interactions with these acquaintances and had observed unknown bullet

[12] Dkt. 43 at 2 (Statement of Uncontested Facts). *See also* Dkt. 44 at 3 ("Brochu[] adopts the six uncontested facts asserted by S[tate Farm] on pages two and three of its CR 56 Memo (Dkt. 43)."); Dkt. 47 at 1 (same).

[13] Dkt. 43 at 2. *See also* Dkt. 57-1 at 6.

[14] Dkt. 44-1 at 9.

[15] Dkt. 57-1 at 6.

[16] *Id.* at 7.

[17] *Id.*

shells in the snowmelt of her driveway.[18] On a few occasions, in an attempt to be a good neighbor, E-Millman allowed Brochu to retrieve materials he had left on the Property, including roofing material and a pump jack system; E-Millman otherwise did not feel "comfortable" permitting Brochu on the Property.[19]

Sometime in 2016,[20] E-Millman allowed her acquaintance, Hannah, to stay at the Property.[21] Hannah is not related to either J-Millman or E-Millman.[22] Hannah was at all pertinent times over the age of 21.[23] Hannah was never under the care or custody of J-Millman or E-Millman.[24] Hannah was permitted to stay the Property by maintaining the premises in lieu of paying rent, including: feeding the dogs, cleaning the Property, cooking food, administering medicine to the dogs, composting, and repairing the Property.[25]

After Hannah moved to the Property, interactions with Brochu continued, escalated, and began to involve Hannah. On July 14, 2016, the Thursday before the incident, Brochu commented that he was going to shoot Hannah's German Shepard puppy due to its constant barking.[26]

---

[18] *Id.*

[19] *Id.*

[20] *See* Dkt. 57-1 at 2.

[21] Dkt. 43 at 2.

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] Dkt. 44 at 5–6 (citing Dkt. 44-1 at 5, 6, 9, 16).

[26] Dkt. 44-1 at 19.

On July 15, 2016, the Friday before the incident, Brochu told Hannah that Hannah could "never build a cabin like that," that the cabin on the Property was "grade A work and [that Hannah] shouldn't be there," and made "derogatory statements about [Hannah] and [his] dog."[27] Brochu continued by pacing back and forth on the edge of the Property with an ax, and invited Hannah to box with Brochu in the "neutral zone"—which was located at the end of the driveway.[28] At some point, Brochu also implied that he possessed a firearm by pointing to his right hip, and making a comment that he could "drop" both Hannah and his dog.[29] Brochu continued this behavior until 4:30 A.M. the next morning, singing and shouting and insulting Hannah " for training [Hannah's] dog to bark at [Brochu]," and pacing "back and forth on the property line singing" derogatory and expletive words, and shouting "[c]ome out to the neutral zone and box."[30] At some point after 4:30 A.M., Hannah fell asleep.[31]

*B. The Underlying Incident*

On July 16, 2016, E-Millman was temporarily out of town attending a personal event while Hannah remained on the Property.[32] Hannah was taking care of—or legally responsible for—two of E-Millman's four dogs on the Property during her absence.[33] As detailed below, an altercation

---

[27] *Id.* at 10.

[28] *Id.* at 11.

[29] *Id.* at 13.

[30] *Id.*

[31] *Id.*

[32] Dkt. 43 at 2. At Oral Argument on July 17, 2019, Counsel for State Farm clarified that E-Millman was out of town attending a rugby tournament. *See* Dkt. 64.

[33] Dkt. 43 at 2.

between Hannah and Brochu occurred, which eventually resulted in Hannah shooting Brochu with a rifle.[34] The Court notes that Brochu has no memories or recollection of the incident or of the preceding events on the day of July 16, 2016 because he was intoxicated during the events as described below.[35]

On the morning of July 16, 2016, Hannah was awoken by pine cones and rocks hitting the windows of the Property, and barking from both his dog and E-Millman's dogs.[36] Brochu continued making derogatory remarks about Hannah, approximately hourly throughout the day; at one point, when Hannah informed Brochu that he would call the police because of his behavior, Brochu stated that he was just kidding and retreated back to his residence.[37]

At some later point on July 16, 2016, an individual came to the Property to pick up shelves from Hannah.[38] Brochu's shouting and yelling increased while the individual was on the Property; at the same time, E-Millman's dogs were audibly barking.[39] When asked by the individual why

---

[34] *Id.*

[35] *See* Dkt. 44 at 15 n.36 ("Frankly, the other reason [for the shooting] is because Brochu was likely drunk and being obnoxious. Brochu doesn't remember the incident."); Dkt. 44-1 at 15 ("Q: Did Mr. Brochu appear intoxicated? A: Probably."); Dkt. 56 at 10 ("Brochu apparently doesn't remember the incident."). Counsel for Brochu confirmed at the Oral Argument on July 17, 2019 that Brochu was intoxicated on the day of July 16, 2016 and that—because of this intoxication—he has no recollection of the events on July 16, 2016. *See* Dkt. 64.

[36] Dkt. 44-1 at 11–12.

[37] *Id.* at 12.

[38] *Id.*

[39] *Id.*

Brochu was mad, Hannah stated that it was "because the dogs are barking"—specifically, E-Millman's dogs.[40]

Shortly after the individual left the Property, Brochu again paced back and forth on the property line.[41] Brochu at some point retreated to a shed on his property, retrieved a large metal level, jogged toward Hannah onto the Property, and told Hannah that he was "going to level" Hannah.[42] Hannah observed during this time that Brochu also motioned his right hand to his side hip, and Hannah suspected that Brochu was reaching for a firearm.[43] In response to Brochu's right hand movement, Hannah fired two warning shots, intending to shoot around Brochu.[44] Despite Hannah's intention not to hit Brochu, Brochu was struck, collapsed and attempted to crawl away from Hannah.[45] Hannah called for an ambulance after observing that he had shot Brochu.[46] During this entire encounter, E-Millman's and Hannah's dogs were audibly barking.[47]

The cause or causes of the incident is disputed between the parties: Brochu asserts that the incident occurred at least in part due to the barking of E-Millman's dogs;[48] State Farm meanwhile argues that Brochu's motivations were based on his dislike of Hannah's puppy and its barking,

---

[40] *Id.*

[41] *Id.* at 12–13.

[42] *Id.*

[43] *Id.* at 13–14.

[44] *Id.* at 14.

[45] *Id.* at 14–15.

[46] *Id.* at 15.

[47] *Id.*

[48] *See* Dkt. 44 at 15. *See also* Dkt. 58 at 5 (noting that the Alaska state court complaint alleges that the interaction between Brochu and Hannah occurred as a result of E-Millman's dogs).

Brochu's anger over the sale of the Property to J-Millman, and Hannah's continued co-residence of the Property.[49] The parties agree, however, that none of the dogs present on July 16, 2016 bit or attacked Brochu at any point during the incident.[50] As a result of the shooting, Brochu suffered certain physical and bodily injury, including paraplegia.[51]

*C. Relevant Insurance Provisions*

At the time of the underlying incident, State Farm maintained a Renters Policy with E-Millman (policy number 02-BE-P971-8) (the "Renters Policy"),[52] and a Homeowners Policy with J-Millman (policy number 02-BG-G989-0) (the "Homeowners Policy," and, collectively, the "Policies").[53]

Both the Homeowners Policy and the Renters Policy define who qualifies as an "insured" under each policy. The provision defining insured in the Renters Policy states, in full:

> 4. "**insured**" means you, and if residents of your household:
>     a. your relatives; and
>     b. any other person under the age of 21 who is in the care of a person described above.
>
> Under Section II, "**insured**" also means:
>     c. with respect to animals or watercraft to which this policy applies, the person or organization legally responsible for them. However, the animal or watercraft must be owned by you or a person included in 4.a. or 4.b. A person or organization using or having custody of these animals or watercraft in the course of a **business**, or without permission of the owner is not an **insured**; and

[49] *See* Dkt. 56 at 8–10.

[50] Dkt. 43 at 2–3.

[51] Dkt. 43 at 2; Dkt. 47 at 7 ("BrochuM is a paraplegic.").

[52] *See* Dkt. 44-2. *See also* Dkt. 43 at 3.

[53] *See* Dkt. 44-3. *See also* Dkt. 43 at 3.

d. with respect to any vehicle to which this policy applies, any person while engaged in your employment or the employment of a person included in 4.a. or 4.b.[54]

The Homeowners Policy likewise contains an identical definition of "insured."[55]

Under "Coverage L – Personal Liability" of "Section II – Liability Coverages," both the Renters Policy and the Homeowners Policy state that "[i]f a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage**" if Coverage L applies, State Farm will provide a defense and indemnify the insured individual.[56]

In the subsequent section, "Coverage M – Medical Payments to Others," State Farm states that it will "pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing **bodily injury**."[57] In whole, Coverage M applies only:

1. to a person on the **insured location** with the permission of an **insured**;
2. to a person off the **insured location**, if the bodily injury:
    a. arises out of a condition on the **insured location** or the ways immediately adjoining;
    b. is caused by the activities of an **insured**;
    c. is caused by a **residence employee** in the course of the **residence employee's** employment by an **insured**; or
    d. is caused by an animal owned by or in the care of an **insured**; or
3. to a **residence employee** if the occurrence causing **bodily injury** occurs off the **insured location** and arises out of or in the course of the **residence employee's** employment by an **insured**.[58]

[54] Dkt. 44-2 at 4 (emphasis original).

[55] *See* Dkt. 44-3 at 15–16.

[56] *See* Dkt. 44-2 at 15 (emphasis original); Dkt. 44-3 at 23 (emphasis original).

[57] *See* Dkt. 44-2 at 15 (emphasis original); Dkt. 44-3 at 23 (emphasis original).

[58] *See* Dkt. 44-2 at 15–16 (emphasis original); Dkt. 44-3 at 23 (emphasis original).

*D. Procedural History*

At some point following Hannah's shooting of Brochu, Brochu filed a personal injury lawsuit in the Superior Court in Alaska, Fourth Judicial District at Fairbanks (Case No. 4FA-17-01472CI), against Hannah and E-Millman.[59] E-Millman was later dismissed with prejudice as a party from the underlying state lawsuit.[60]

In the operative state court complaint, Brochu alleges and asserts that Hannah acted negligently, criminally, recklessly and intentionally in the shooting, and seeks both compensatory and punitive damages.[61] Because of these allegations, State Farm agreed to provide a defense to Hannah in the underlying state lawsuit.[62] It is undisputed by the parties that State Farm agreed to provide a defense to Hannah subject to a reservation of rights to disclaim insurance coverage, contest coverage in a declaratory judgment action, and withdraw from the defense in the event that it is determined that State Farm has no obligation to defend.[63]

---

[59] Dkt. 1 at 3. *See also* Dkt. 1-1; Dkt. 43 at 3.

[60] *See* Dkt. 43 at 3 n.10 ("Brochu later agreed to dismiss Elizabeth Millman as a defendant in his first amended complaint."). *See also Brochu v. Hannah*, Order Granting Stipulation for Partial Dismissal with Prejudice Dismissing Elizabeth Millman, No. 4FA-17-01472CI (Alaska Super. Ct. Sept. 14, 2018). It is appropriate for the Court to take judicial notice of the docket and filings of court proceedings. *See United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) ("[Courts] may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." (internal quotation marks and citations omitted)).

[61] Dkt. 43 at 3.

[62] *See generally* Dkt. 1.

[63] *See* Dkt. 43 at 6, n.28 ("State Farm is currently providing a defense to Steven Hannah under a reservation of rights pending resolution of this declaratory judgment action."); Dkt. 47 at 9 ("It is undisputed that S[tate Farm] reserved rights (coverage defense) herein and thus appointed Jon Katcher, Esq. as *CHI* counsel to defend Hannah." (internal citations omitted)).

State Farm filed the Complaint in this matter on April 16, 2018.[64] Defendants E-Millman and Hannah answered the Complaint on July 30, 2018, and October 9, 2018, respectively.[65] J-Millman—based on representations made by State Farm and on the fact that he was not a party in the underlying lawsuit—disclaimed any interest in this declaratory action.[66] Brochu entered this case through an unopposed Motion to Intervene,[67] which the Court granted,[68] and later filed an Answer in response to State Farm's Complaint.[69]

State Farm subsequently moved for summary judgment, arguing that it did not owe a duty to defend or a duty to indemnify Hannah under either the Renters Policy or Homeowners Policy.[70] Brochu opposed and cross-moved, arguing that State Farm owed a duty to indemnify Hannah under both policies.[71] Brochu also filed a separate Motion for Summary Judgment, asserting that State Farm owes a duty to defend to Hannah.[72] State Farm subsequently opposed and replied to both Brochu's Opposition and Motions for Summary Judgment.[73] Brochu later replied to State

[64] Dkt. 1.

[65] *See* Dkt. 10 (E-Millman's Answer); Dkt. 31 (Hannah's Answer).

[66] Dkt. 11 (Disclaimer of Interest).

[67] Dkt. 25 (Motion to Intervene).

[68] Dkt. 35 (Order Granting Motion to Intervene).

[69] Dkt. 36 (Brochu's Answer to State Farm's Complaint).

[70] Dkt. 42 (Motion); Dkt. 43 (Memorandum).

[71] Dkt. 44 (Opposition and Cross-Motion).

[72] Dkt. 46 (Motion); Dkt. 47 (Memorandum).

[73] Dkt. 56 (Opposition and Reply). Because State Farm's filing at docket 56 responds to arguments in the Cross-Motion for Summary Judgment and Motion for Summary Judgment, the Court construes it as an Opposition to both of these Motions.

Farm's Opposition to his Motions for Summary Judgment.[74] Neither E-Millman nor Hannah engaged in any briefing on the Motions for Summary Judgment.[75]

After the parties' briefing concluded, State Farm moved for a hearing on the Motions for Summary Judgment,[76] which the Court granted.[77] The Court heard Oral Arguments from Counsel for State Farm and Brochu on July 17, 2019.[78] Counsel for Hannah attended, but did not substantively participate in the hearing.[79] The matter is now ripe for resolution.

## III. LEGAL STANDARD

Summary judgment is appropriate where, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party,[80] "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[81] Material facts are those which might affect the outcome of the case.[82] A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the

---

[74] Dkt. 58.

[75] State Farm did file an Affidavit from E-Millman in support of its Opposition and Reply. *See* Dkt. 57.

[76] Dkt. 59. No parties opposed or responded to State Farm's Motion for a Hearing.

[77] Dkt. 60.

[78] Dkt. 64.

[79] *Id.*

[80] *Scott v. Harris*, 550 U.S. 372, 378 (2007).

[81] Fed. R. Civ. P. 56(a). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986); *Jensinger v. Nev. F. Credit Union*, 24 F.3d 1127, 1130–31 (9th Cir. 1994).

[82] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

non-moving party."[83] "There is no genuine issue of fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion."[84] A movant's burden may be met by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."[85]

Once a movant has met its initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify facts which show a genuine issue for trial.[86] "[W]hen simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them."[87] Finally, "[w]here ... the case turns on a mixed question of fact and law and the only disputes relate to the legal significance of undisputed facts, the controversy is a question of law suitable for disposition on summary judgment."[88]

## IV. ANALYSIS

State Farm moves for summary judgment on two bases: (1) that Hannah does not qualify as an insured under the liability portion found in Coverage L of the Renters Policy and the

---

[83] *Id.* at 248.

[84] *Mills v. Wood*, No. 4:10-CV-00033-RRB, 2015 WL 2100849, at *1 (D. Alaska May 6, 2015), *aff'd in part*, 726 F. App'x 631 (9th Cir. 2018) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[85] *Celotex*, 477 U.S. at 325.

[86] *Id.* at 323–24.

[87] *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001).

[88] *Coomes v. Edmonds Sch. Dist. No. 15*, 816 F.3d 1255, 1262 (9th Cir. 2016) (quoting *Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011)).

Homeowners Policy;[89] and (2) that possible medical payments provided under Coverage M do not give rise to a duty to defend or indemnify Hannah against liability claims under Coverage L.[90] Additionally, in State Farm's Opposition to Brochu's Motions for Summary Judgment and Reply to Brochu's Opposition to State Farm's Motion for Summary Judgment, State Farm also argues that Brochu is not entitled to a medical payment under Coverage M as a matter of law.[91]

In the Cross-Motion for Summary Judgment, Brochu cross-moves for summary judgment, asserting that Hannah is an insured under both the Renters Policy and the Homeowners Policy and that State Farm owes a duty to indemnify Hannah in the underlying state tort action.[92] Brochu also argues that Hannah was a "residence employee" as defined by the Renters Policy,[93] and that the liability coverage of the Homeowners Policy applies even if J-Millman does not own the dogs that were present on the date of the incident.[94]

In the separate Motion for Summary Judgment, Brochu also moves for summary judgment to establish that State Farm has a duty to defend Hannah under both Policies.[95] Brochu further argues that—should the Court determine that State Farm owes no duty to defend Hannah in the underlying state court matter—State Farm should still be estopped from denying it owes a duty to

---

[89] Dkt. 43 at 6–9.

[90] *Id.* at 9–12.

[91] Dkt. 56 at 11–13.

[92] Dkt. 44 at 7–9, 11 –16.

[93] *Id.* at 9–10. Brochu concedes that Hannah is not a "residence employee" as defined under the Homeowners Policy maintained by J-Millman. *See id.* at 9 ("It is agreed that under no circumstance is BrochuM entitled to Medical Payments coverage under MillmanJ's SF/Homeowner's policy.").

[94] *Id.* at 10–11.

[95] *See* Dkt. 46; Dkt. 47 at 5–8.

Hannah to "prevent injustice by precluding S[tate Farm] from asserting a position inconsistent with a position previously taken by it."[96]

In addressing the parties' arguments, the Court first considers the initial threshold question of whether Hannah is an insured as defined by the Policies. For the reasons described below, the Court concludes that Hannah does not qualify as an insured as defined by the Policies, and that State Farm therefore owes no duty to defend or indemnify under Coverage L of the Policies. The Court next turns to whether Coverage M gives rise to a duty for State Farm to defend or indemnify Hannah in the underlying state court litigation. After reviewing the language of Coverage M, the Court concludes that Coverage M does not contain any duty to defend or indemnify Hannah. The Court finally considers the parties remaining arguments, including whether State Farm is estopped from denying it owes a duty to defend Hannah in the underlying litigation, and whether Brochu is entitled to or precluded from medical payments under Coverage M of the Policies.

*A. Whether Hannah Qualifies an "Insured" Under the Policies and State Farm Owes Hannah a Duty to Defend and Indemnify Under Coverage L*

The core dispute in this litigation turns on whether Hannah is an insured under both Policies. State Farm argues that Hannah does not meet any the four listed definitions of "insured" under the Policies, and thus cannot be considered an insured;[97] while Brochu argues that Hannah is an insured specifically under subsection c., which provides insurance coverage in limited circumstances to those third-parties who are legally responsible for animals and watercraft owned by qualified insureds.[98] It is undisputed by the parties that Coverage L is the provision that imposes

[96] *Id.* at 9.

[97] *See* Dkt. 43 at 6–12; Dkt. 56 at 3–11.

[98] *See* Dkt. 44 at 7–9, 11–16; Dkt. 47 at 7–9; Dkt. 58 at 3–7.

a duty on State Farm to defend and indemnify qualified individuals (*e.g.* an "insured") under both Policies.[99] Thus, whether Hannah is an insured under the Policies necessarily goes to the crux of the parties' dispute: whether State Farm owes a duty to defend or indemnify to Hannah.[100]

1. Interpretation of Insurance Agreements Under Alaska Law

An insurer's obligation to indemnify is determined by the terms of the insurance policy.[101] Under Alaska law, interpreting insurance policy language is a question of law, and is thus appropriate for resolution on summary judgment.[102] An insurance policy is generally "construed in such a way as to honor a lay insured's reasonable expectations."[103] In other words, the "objectively reasonable expectations of applicants . . . regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those

[99] *See* Dkt. 43 at 6 ("Section II of the State Farm homeowners policy issued to John Millman, and Section II of the State Farm renters policy issued to Elizabeth Millman, provide certain personal liability coverage (Coverage L), but only to those persons identified as an 'insured' under Coverage L."); Dkt. 44 at 3 (citing to Coverage L, and noting that the provision "provide[s] liability insurance to insured for Bodily Injury (BI) and Property Damage (PDF) caused by an 'occurrence'"); Dkt. 47 at 2 (substantively same).

[100] *See* Dkt. 44-2 at 15 (Coverage L of the Renters Policy); Dkt. 44-3 at 23 (Coverage L of the Homeowners Policy); *State, Dept. of Transp. and Public Facilities v. State Farm Fire and Cas. Co.*, 939 P.2d 788, 792 (Alaska 1997) ("Liability insurers have separate duties to defend and indemnify *their insureds*." (emphasis added)). *See also* Dkt. 56 at 3 ("Thus, the question whether Hannah has coverage turns on whether or not he qualifies as an 'insured' within the meaning of either the homeowners or renters policy.").

[101] *See Devine v. Great Divide Ins. Co.*, 350 P.3d 782, 786 (Alaska 2015); *United Servs. Auto. Ass'n v. Neary*, 307 P.3d 907 (Alaska 2013); *Williams v. Geico Cas. Co.*, 301 P.3d 1220, 1225 (Alaska 2013); *State Farm Mut. Auto. Ins. Co. v. Houle*, 269 P.3d 654, 658–59 (Alaska 2011).

[102] *State Farm Mut. Auto Ins. Co. v. Dowdy*, 192 P.3d 994, 998 (Alaska 2008).

[103] *Dowdy*, 192 P.3d at 998. *See also C.P. ex rel. M.L. v. Allstate Ins. Co.*, 996 P.2d 1216, 1222 (Alaska 2000).

expectations."[104] Thus, where there are ambiguities in an insurance policy, they are to be construed in favor of the insured.[105]

Alaskan courts find that "ambiguities only exist when there are two or more reasonable interpretations of particular policy language."[106] A mere disagreement as to the interpretation of a term between the parties is not evidence of the existence of an ambiguity.[107] Rather, "[a]n ambiguity exists only where the contract as a whole and all the extrinsic evidence support two different interpretations, both of which are reasonable."[108]

In interpreting an insurance policy and its provisions, courts consider four factors: "(1) the language of the disputed provisions in the policy, (2) other provisions in the policy, (3) extrinsic evidence, and (4) case law interpreting similar provisions."[109] When reviewing the language of the disputed provisions, courts "construe[ policy language] in accordance with ordinary and customary usage."[110] Courts further "construe grants of coverage broadly and interpret exclusions

---

[104] *Id.*

[105] *See Dowdy*¸192 P.3d at 998 ("Ambiguities in an insurance policies are to be construed most favorably to an insured."). *See also Great Divide Ins. Co. v. Carpenter ex rel. Reed*, 79 P.3d 599, 606 (Alaska 2003) ("We therefore resolve ambiguities in the meaning of insurance contracts against the insurer.").

[106] *Dowdy*¸192 P.3d at 998. *See also Neary*, 307 P.3d at 910 ("Policy language is ambiguous when it susceptible to two or more reasonable interpretations.").

[107] *See C.P. ex rel. M.L.*, 996 P.2d at 1222 n.38 ("An ambiguity does not exist, however, merely because the parties disagree as to the interpretation of a term."). *See also State Farm Fire and Cas. Co. v. Bongen*, 925 P.2d 1042, 1046 (Alaska 1996) ("A policy term is not ambiguous . . . merely because one party assigns a different meaning to it in accordance with his or her own interests.").

[108] *C.P. ex rel. M.L.*, 996 P.2d at 1222 n.38.

[109] *Allstate Ins. Co. v. Teel*, 100 P.3d 2, 4 (Alaska 2004).

[110] *Dowdy*¸192 P.3d at 998.

narrowly."[111] Finally, when reviewing competing interpretations, courts will "if possible give effect to all parts of the instrument and an interpretation which gives a reasonable meaning to all its provisions will be preferred to one which leaves a portion of the writing useless or inexplicable."[112]

Additionally, "[l]iability insurers have separate duties to defend and indemnify their insureds."[113] "An insurer's duty to defend is broader than its duty to indemnify."[114] "The duty to defend exists when the facts as alleged in the underlying complaint, if proven, 'would give rise to a finding of liability covered by the policy,'" and where "'at least one cause of action alleged in the complaint for which there is possibly of coverage under the policy.'"[115] "[W]hen a complaint is sufficient on its face to create an issue of liability covered by the policy, even though based on 'false, fraudulent, or groundless' allegations, an insurer may not look to extrinsic facts to escape its duty to defend the insured."[116] To prevail on a motion for summary as to a duty to defend, an insurer is "required to show that there [is] no disputed issues of material fact and that it [is] entitled

---

[111] *C.P. ex rel. M.L.*, 996 P.2d at 1223.

[112] *Modern Construction, Inc. v. Barce, Inc.*, 556 P.2d 528, 530 (Alaska 1976).

[113] *State, Dept. of Transp.*, 939 P.2d at 792. *See also Sauer v. Home Indem. Co.*, 841 P.2d 176, 180 (Alaska 1992); *Afcan v. Mutual Fire, Marine and Inland Ins. Co.*, 595 P.2d 638, 645 (Alaska 1979).

[114] *Devine*, 350 P.3d at 788. *See also State, Dept. of Transp.*, 939 P.2d at 792 ("[An] insurer may have an obligation to defend although it has no ultimate liability under the policy.").

[115] *Devine*, 350 P.3d at 788 (internal citations omitted). *See also Makarka ex rel. Makarka v. Great American Ins. Co.*, 14 P.3d 964, 969 (Alaska 2000) ("Our duty-to-defend cases have established where 'vagaries [of] law and fact' are sufficient to create the potential that an insured will incur covered liability, the insurer must defend."); *State, Dept. of Transp.*, 939 P.2d at 792.

[116] *Devine*, 350 P.3d at 788 (internal citation and quotations omitted). *See also Afcan*, 595 P.2d at 645.

to judgment as a matter of law that insurance as provided in its contract . . . did not cover any of the causes of action alleged in [the] complaint."[117]

2. Whether the Court Can Consider Extrinsic Evidence

At the outset, the Court notes that there is a dispute between the parties as to whether the Court can consider extrinsic evidence in determining the scope of State Farm's duty to defend Hannah. Brochu argues that the Court is limited to consideration of *only* the allegations in his underlying state court complaint in determining whether State Farm owes a duty to defend Hannah.[118] In contrast, State Farm argues that the Court can consider undisputed facts in determining whether State Farm owes a duty to defend Hannah.[119]

The Court need not resolve this dispute for two reasons: (1) as Alaska case law makes clear that courts can consider the undisputed facts of the case; and (2) even limiting the Court's consideration to the allegations in Brochu's state court complaint, the Court reaches the same conclusion because Brochu's allegations mirror the undisputed—and as discussed below, the relevant and key—facts in this matter.

---

[117] *Devine*, 350 P.3d at 788–89. *See also Makarka*, 14 P.3d at 970 ("[A]s here, we consider[] the policy language and the undisputed facts of the case and found that because the policy did not provide coverage for the claims alleged against the insured, the insurer was correct in its assertion that it had no duty to defend the claim.").

[118] *See* Dkt. 47 at 7–8 (highlighting that Brochu had pled "Hannah's legal responbility for the animals (paragraph 12) and . . . pleads causation between the animals and the interaction leading to BrochuM's injuries (paragraph 13)"). *See also* Dkt. 47-4 (Brochu's state court complaint).

[119] *See* Dkt. 56 at 8–11 (citing undisputed facts that are beyond the allegations present in Brochu's state court complaint). The Court notes that the parties also argued the issue of what the Court may consider at Oral Argument on July 17, 2019. *See* Dkt. 64.

First, the Alaska Supreme Court has considered undisputed facts in cases in addition to policy language in determining whether an insurer owes a duty to defend an insured.[120] Thus, the Court is not necessarily precluded from consideration of the undisputed facts in this matter.

Second, even assuming that the Court is limited to Brochu's allegations in determining State Farm's duty to defend Hannah, Brochu's allegations are identical to the undisputed facts in this matter. As Brochu has pled, "Hannah was legally responsible for animals (dogs) located on [J-Millman's] property," that an "interaction between Brochu and Hannah occurred as a result of the same animals (dogs) located on [J-Millman's] property," and that this interaction led to "Hannah accidently sh[ooting] his next-door-neighbor Brochu with a rifle."[121] Brochu also acknowledges through his allegations that "[b]ullets fired by Hannah caused Brochu nerve damage, resulting in permanent/partial paraplegia."[122]

The only apparent difference between Brochu's allegations and the undisputed facts in the record is that Brochu pleads a closer connection between E-Millman's dogs and the impetus of the interaction that eventually led to Hannah's shooting of Brochu. As noted, State Farm disagrees that the incident occurred because of the barking of E-Millman's dogs.[123] But such a difference does not impact the Court's analysis in determining State Farm's duty to defend: as discussed below, whether E-Millman's dogs were the only cause, or one cause of several causes that led to the incident is irrelevant both to interpreting the Policies, and to reaching the conclusion that Hannah does not meet the definition of an insured as defined in the Policies. In other words, even

---

[120] *See supra* n.117.

[121] Dkt. 47-4 at 4.

[122] *Id.* at 5.

[123] *See supra* nn. 48, 49.

accepting and limiting consideration to Brochu's allegations in his state court complaint, the Court reaches the same conclusion: simply, that Hannah is not an insured under the Policies.

3. Summary of Parties' Arguments

As previously noted, the Policies define "insured" under four subsections.[124] State Farm argues that Hannah fails to meet any of these subsections and that he is not the named individual on the Policies.[125] Brochu concedes that Hannah is not a named individual on the Policies, and that Hannah does not meet the qualifications laid out in subsections a., b., or d.[126]

The Court agrees that Hannah is not a named individual on the Policies, and that he clearly does not meet the criteria described in these three subsections, which would require (a) that Hannah is a relative of E-Millman or J-Millman, (b) that he is a person under 21 under the care of E-Millman or J-Millman or their relative, or (d) that involve a vehicle to which the Policies apply.

Instead, the dispute turns on whether Hannah is an insured as defined by subsection c. under the Policies. The entirety of subsection c. provides that, under Section II of the Policies listing coverages including Coverages M and L, an "insured" includes:

> with respect to animals or watercraft to which this policy applies, the person or organization legally responsible for them. However, the animal or watercraft must be owned by you or a person included in 4.a. or 4.b. A person or organization using or having custody of these animals or watercraft in the course of a **business**, or without permission of the owner is not an **insured**.[127]

[124] *See supra* Section II.C.

[125] *See* Dkt. 43 at 6–12.

[126] *See* Dkt. 44 at 7–9.

[127] *See* Dkt. 44-2 at 4 (emphasis original); Dkt. 44-3 at 15 (emphasis original).

State Farm advances two arguments justifying why Hannah does not meet this definition of insured. First, State Farm contends that this paragraph—which begins with the limiting phrase, "with respect to animals . . . to which this policy applies," does not provide liability coverage under Coverage L; State Farm notes that this language may instead trigger a separate duty of State Farm to pay medical payments to Brochu under Coverage M, as Coverage M is the only coverage that expressly mentions animals under Section II of the Policies.[128] Second, State Farm argues that—even assuming that liability coverage is provided to those who meet subsection c.'s definition—the provision applies only where the injury is actually caused by the animal; here, it is undisputed that Hannah shot Brochu with a rifle, and thus, he does not qualify as an insured.[129] In support of this second argument, State Farm cites to a case arising out of the United States District Court for the District of Oregon, *Dixon v. Sentinel Ins. Co., Ltd.*[130]

Brochu rejects these arguments, asserting several counterarguments. First, Brochu contends that because Hannah was "legally responsible" for E-Millman's dogs at the time of the incident, he meets the definition of "insured" and is plainly covered, especially where coverage is broadly construed under Alaska law.[131] Second, Brochu argues that State Farm owes a duty to defend and indemnify under subsection c., arguing that the language of subsection c. is applied to the entirety of Section II's coverages, and that relief is not limited to medical payments under

---

[128] *See* Dkt. 43 at 10–11.

[129] *See id.* at 11–12; Dkt. 56 at 6–11.

[130] Dkt. 43 at 11 (citing *Dixon v. Sentinel Ins. Co., Ltd.*, CV 09-1091-DK, 2010 WL 1924699 (D. Ore. Apr. 8, 2010), *adopted by Dixon v. Sentinel Ins. Co. Ltd.*, CV 09-1091-PK, 2010 WL 1924697, (D. Ore. May 10, 2010)). *See also* Dkt. 56 at 7–8 (discussing *Dixon*).

[131] Dkt. 44 at 7–9. *See also* Dkt. 47 at 8–9 (arguing that Brochu has pled a possibility of coverage); Dkt. 58 at 3–5.

Coverage M.[132] Finally, Brochu argues that *Dixon* is inapposite, emphasizing that the plaintiff's injuries in *Dixon* occurred off the insured residence, and did not involve animals.[133]

4. Whether Hannah is an Insured Under the Policies

Here, after consideration of the relevant three factors, including the plain language of the Policies, other provisions in the Policies, and authority interpreting similar insurance provisions, the Court concludes that Hannah is not an insured as defined by subsection c.[134] The Court is persuaded by the well-reasoned *Dixon* opinion arising from the District of Oregon. Indeed, *Dixon* demonstrates why Brochu's arguments that Hannah qualifies as an insured are without merit.[135]

In *Dixon*, the policyholders of a homeowners insurance policy asked their son, Travis Billmyre, to feed their pets and pick up their mail while they were on vacation.[136] Billmyre, who did not live with his parents, was given a key to enter the house, and was specifically told not to host any parties at the house while they were away.[137] Despite this specific instruction, Billmyre, while attending to the pets and mail, hosted a party to celebrate his twenty-second birthday at the property.[138] One attendee, Steven Dixon, consumed alcohol while at the party, became intoxicated,

---

[132] Dkt. 44 at 12–13, 14 –16.

[133] *Id.* at 14. *See also* Dkt. 58 at 5–7 (arguing that dogs were a cause of Brochu's injuries).

[134] Alaska law permits a court to consider a fourth factor when interpreting provisions in an insurance agreement—extrinsic evidence. *See Teel*, 100 P.3d at 4. Here, neither party introduced extrinsic evidence as to the meaning of subsection c.

[135] At the Oral Argument on July 17, 2019, the Court confirmed with the parties that no other cases existed where courts grappled with the meaning of substantively similar policy language. *See* Dkt. 64.

[136] *Dixon*, 2010 WL 1924699 at *1.

[137] *Id*.

[138] *Id*.

and subsequently passed out on railroad tracks adjacent to the property.[139] Around midnight, a train hit Dixon, causing serious injuries.[140] Dixon later brought suit against the insurer, Sentinel Insurance Co., Ltd. ("Sentinel Insurance"), seeking to recover under the homeowners policy Billmyre's parents' possessed.[141]

Significantly, the *Dixon* matter too turned on whether Billmyre qualified as an insured while being legally responsible for animals owned by his parents—the named policyholders—under substantively identical language. Like here, it was undisputed that Billmyre did not qualify as an insured under matching insured definitions that encompassed household residents who are relatives, or other persons under the care of the insured or these relatives and were under the age of 21.[142] Thus, the *Dixon* court was left to consider only whether Billmyre was an insured within the meaning of a similar provision concerning animals. That provision stated in its entirety:

> c. Under Section II:
>
> (1) with respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in a. or b. above. "Insured" does not mean a person or organization using or having custody of these animals or watercraft in the course of any business or without consent of the owner . . . [143]

As here, the parties in *Dixon* also argued over whether the insured definition regarding animals included personal liability coverage—which did not mention animals—or whether it was

[139] *Id.*

[140] *Id.*

[141] *Id.*

[142] *Id.* at *2–3.

[143] *Id.* at 2.

limited to medical payments—which specifically mentioned animals.[144] The *Dixon* court concluded that, because the above definition referenced Section II generally, and Section II included both personal liability and medical payment coverage, that "limit" was not relevant, because the reference necessarily included both coverages.[145]

Similarly, the Policies here state that subsection c. applies to Section II, which includes both Coverage L—containing the duties to defend and indemnify—and Coverage M—containing State Farm's obligation to pay medical payments. Thus, the Court follows the *Dixon* court's reasoning: the Court rejects State Farm's interpretation that subsection c. only applies to and permits medical payments under Coverage M—as the plain text of the language is clear that an "insured" qualified under subsection c. applies to Section II without limitation.

The *Dixon* court thereafter turned to the "real issue" of the matter: "the meaning of the phrase 'with respect to animals.'"[146] Notably, this phrase is also present in subsection c. of the Policies in this matter. Dixon argued that the phrase "with respect to animals" only "requires that the person be engaged in the care of animals at the time of the occurrence."[147] On the other hand, Sentinel Insurance argued that "the phrase means that a person responsible for caring for an animal is an insured only for claims arising injuries or damages caused by the animal while in that person's care."[148]

---

[144] *Id.* at 3.

[145] *Id.* at *3.

[146] *Id.*

[147] *Id*.

[148] *Id*.

After consideration of these arguments, the *Dixon* court concluded that Billmyre was not an insured under the homeowners policy on several grounds. First, the *Dixon* court held that Dixon's "definition [wa]s not plausible," and that, "[u]nder Dixon's interpretation, the policy provides no definition or other limit for when care of animals ceases and coverage would apply."[149] The *Dixon* court highlighted that coverage would apply under Dixon's interpretation merely "because the harm occurred while [Billmyre] remained on the premises performing his care-giving duties."[150] Thus, Dixon's interpretation would "require[] that a court or fact finder provide a reasonable limit on personal liability coverage for animal caregivers, because the policy itself does not provide a limit."[151]

Second, the *Dixon* court found that Sentinel Insurance's interpretation was the "only plausible interpretation."[152] As Sentinel Insurance's interpretation "only extends personal liability coverage for harm caused by animals . . . there is no need to determine a spacial [sic] or temporal limit to when a person is or is not engaged in care for animals."[153] Moreover, under a plain reading of "[u]nder Section II" and "with respect to animals" indicates "that a person has liability coverage 'with respect to animals,' not 'with respect to animal care.'"[154]

---

[149] *Id.* at *4.

[150] *Id.*

[151] *Id.*

[152] *Id.*

[153] *Id.*

[154] *Id*. The *Dixon* court did recognize that "it [was] unclear why the definition of insured does not explicitly limit coverage to harm caused by animals when the medical payments to others section does explicitly include that limitation," before concluding that Sentinel Insurance's interpretation remained the only plausible one. *Id.*

Finally, the *Dixon* court also concluded that additional phrase, "legally responsible for these animals," supported its holding that Sentinel Insurance's interpretation is reasonable.[155] Citing to the dictionary, *Dixon* noted that "[r]esponsible means 'liable to be called on to answer' or 'liable to be called to account as the primary cause, motive, or agent (a committee responsible for the job),'"[156] and, thus, the phrase "'legally responsible for these animals' extends coverage to the person who is answerable for the animals."[157] The *Dixon* court rejected Dixon's interpretation—that the animal caregiver is answerable for any harm that might occur while the caregiver performs his or her duties—because the "interpretation strains against the plain meaning of the phrase, 'legally responsible for these animals,' because the phrase only refers to animals, not the premises generally."[158]

Despite Brochu's arguments to the contrary, these same grounds apply with equal force in interpreting subsection c. of the Policies. Subsection c. of the Policies contains substantively identical language as the policy in *Dixon*, including the phrases "with respect to animals" and "the person . . . legally responsible for them." Brochu cites no authority suggesting that the Court should reach a different interpretation as to the meaning of the language in subsection c. of the Policies. Indeed, having reviewed the plain language of subsection c. and other provisions in the Policies, the Court concludes—for the reasons stated in *Dixon*—that an individual is an insured "with

---

155 *Id.*

156 *Id.* (quoting Merriam-Webster Online Dictionary, *at* http://www.merriam-webster.com/dictionary/responsible (April 6, 2010)).

157 *Id.*

158 *Id.*

respect to animals," not "with respect to animal care," and that coverage extends only to harm caused by animals.

Additionally, Brochu's arguments that his injuries were caused by E-Millman's dogs are without merit. It is undisputed in the record, and Brochu's allegations in his state court complaint are clear, that the injuries he suffered were the result of being shot by Hannah. The only nexus to animals is that E-Millman's dogs' barking initiated the encounter which ultimately resulted in Hannah shooting Brochu with a rifle. The Court concedes that this is a closer question than in *Dixon*, where the connection to animals was more attenuated to the injury ultimately suffered by Dixon.

Nonetheless, Brochu's arguments implicate the same concerns raised by the court in *Dixon*, and are plainly contradicted by Alaska law. First, for the same reasons as in *Dixon*, Brochu's interpretation of subsection c. is not plausible or reasonable. Brochu's interpretation provides no definition or other limit for when care of animals ceases such that coverage would no longer apply. Here, the actions of the animals amounted to barking; the injury suffered by Brochu was the result of bullets fired by Hannah. There is no indication or support for the notion that the presence of animals transforms subsection c. into a catch-all for individuals who are caring for animals owned by policyholders. Brochu's arguments ignore the plain meaning and limitation that the actual harm suffered must be caused by the animal itself—not by the individual legally responsible for such animals.

Second, Brochu's arguments—attempting to connect the barking of E-Millman's dogs with his injuries—are contradicted by Alaska law. Brochu agrees with State Farm's characterization that "[t]he phrase 'with respect to animals' extends personal liability coverage only to claims against a person 'legally responsible' for animals arising out of bodily injury or damage caused by

the animal while in that persons' care."[159] Brochu contends that he has satisfied the operative language: that Brochu's injuries arise out of E-Millman's dogs because the incident that led to him being shot was started by her dogs' barking.[160] Brochu argues that Alaska law "has long recognized 'arising out of' language as broad-form insurance coverage," and that E-Millman's dogs need not be "'the' direct cause of harm," only that they be "'a' cause of harm."[161] Citing to the Alaska Civil Pattern Jury Instructions, Brochu contends that "civil tort liability in Alaska has always been predicated upon the offensive conduct being 'a' substantial factor causing harm."[162]

Brochu's contentions here are without merit. Alaska "courts do not require proximate cause in its strict legal sense" in interpreting insurance policy language.[163] Instead, what is required is a "causal connection" between the injury and the potentially covered action.[164]

Significantly, *Kalenka v. Infinity Ins. Co.*[165] suggests that there is in insufficient causal connection between E-Millman's dogs' barking and Hannah's shooting of Brochu. In *Kalenka*, the

---

[159] Dkt. 58 at 7.

[160] *Id.*

[161] *Id.*.

[162] *Id.* at 6 (citing Alaska Civil Pattern Jury Instructions 3.01 "Negligence – When Plaintiff Entitled to Recover") (emphasis original).

[163] *Criterion Ins. Co. v. Velthouse*, 751 P.2d 1, 3 (Alaska 1986). *See also Shaw v. State Farm Mut. Auto. Ins. Co.*, 19 P.3d 588, 591–92 (Alaska 2001). The Alaska Supreme Court has extended the causal connection requirement beyond that of automobile policies. *See D.D. v. Ins. Co. of N. Amer.*, 905 P.2d 1365, 1368 (Alaska 1995) (interpretation of business owners insurance where claim for medical malpractice did not meet the causal connection requirement).

[164]*Criterion*, 751 P.2d at 5. Brochu recognizes that a "causal connection" limits instances of coverage. *See* Dkt. 58 at 7, n.8 ("But there are still limits on 'arising out of' coverage. *See Criterion* . . . requiring a 'casual connection.'").

[165] 262 P.3d 602 (Alaska 2011).

Alaska Supreme Court considered whether automobile insurance coverage extended to an incident that began as a car accident in a fast food drive-through line, but escalated into a heated discussion and that led to the driver-at-fault fatally stabbing the driver who he had accidently hit.[166] The victim driver's estate argued that his injuries and death "arose out of the use [of] the [attacker driver's automobile] because the collision of the [attacker's automobile] with [the victim's automobile] triggered the confrontation which ended [the victim's] life."[167] In rejecting coverage, the Alaska Supreme Court found an insufficient causal connection between the car accident and the stabbing, and that there was an "act of independent significance" between these events.[168] In so addressing the insufficient causation, the Alaska Supreme Court stated that the "collision between [the attacker's] and [the victim's] vehicles was only the subject of their fight; the vehicles played no part in the fight itself. Accordingly, there was insufficient causation for [the victim's death] to have arisen out of the 'use' of the vehicle [the attacker] was driving."[169]

Here, Brochu's arguments echo the victim driver's estate, and similarly fail to demonstrate a sufficient causal connection. Even construing the facts in the record most favorably to Brochu or limiting consideration of the facts to Brochu's pled allegations, there is insufficient causation between E-Millman's dogs and Brochu's injuries because the injuries Brochu suffered were caused by Hannah's shooting of Brochu. The barking of E-Millman's dogs may have been the impetus or "subject of their fight," but "the [dogs] played no part in the fight [or shooting] itself."[170]

---

[166] *Id.* at 604–05, 608.

[167] *Id.* at 608.

[168] *Id.* at 609–10.

[169] *Id.* at 609.

[170] *Id.*

In sum, after having considered the plain language of subsection c., other provisions in the Policies, and case law interpreting similar provisions, the Court concludes that Hannah does not meet the definition of insured under subsection c. Because Hannah does not otherwise meet the other definitions of insured, Hannah is not an insured under the Policies. Therefore, State Farm owes no duty under Coverage L of the Policies to defend or indemnify Hannah in the underlying state court litigation.[171]

Accordingly, the Court **GRANTS** summary judgment as to State Farm's claim that Hannah is not an insured under the Policies and is thus not entitled to a defense or indemnification from State Farm under Coverage L of the Policies.

*B. Whether Coverage M Otherwise Gives Rise to a Duty to Defend or Indemnify Hannah*

State Farm also moves for summary judgment that Coverage M does not give rise to a duty to defend or duty to indemnify Hannah in the underlying state court litigation.[172] Specifically, State Farm again reiterates that Hannah is not an insured under section c., and argues that "[e]ven if Coverage M arguably exists, it has nothing to do with coverage under the liability provisions of the policy (Coverage L), including any purported duty to defend or indemnify Hannah as to Brochu's claims."[173] State Farm also argues—anticipating Brochu's arguments—that whether Hannah qualifies as a "residence employee" under Coverage M of the Policies is irrelevant to the

[171] The Court recognizes that there are additional arguments the parties made that are not addressed in this Order, including whether J-Millman's policy applies in light of the fact that he did not own the dogs, and E-Millman was not a resident of J-Millman's household. *See* Dkt. 56 at 4–6. In light of the Court's holding that Hannah is not an insured under the Policies, and is thus not entitled to a duty to defend and indemnify from State Farm, these arguments are no longer relevant. The Court declines to address these arguments.

[172] Dkt. 43 at 9–12.

[173] *Id.* at 11–12.

determination of whether State Farm owes a duty to defend and indemnify to Hannah.[174] In response to State Farm's Motion for Summary, Brochu argues that Hannah was a "residence employee," and that medical payments coverage exists under Coverage M.[175]

After consideration of the language of Coverage M and other provisions in the Policies, the Court concludes that Coverage M does not implicate any duty to defend or indemnify. Having reviewed the plain language of the Policies, it is unambiguous that no duty to defend or to indemnify arises from Coverage M. As State Farm correctly points out, Coverage M only lists situations in which State Farm contractually agrees to pay for medical coverage. Nowhere in Coverage M in the Policies does the text state that a duty to defend or indemnify arises for State Farm to individuals mentioned—including "residence employees."[176] Thus, by its plain textual language, no duty to defend or indemnify arises for State Farm under Coverage M.

Significantly, Coverage L of both policies is the sole provision of the Policies that explicitly provides instances where State Farm owes a duty to defend and indemnify. The Policies both provide that State Farm owes a duty to defend and indemnify only where "a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to

---

[174] *See id.* at 12 ("But for the purposes of the instant summary judgment motion, even if these Coverage M provisions are later found applicable, the sole implication of such conclusion under either the homeowners policy or the renters policy would be to trigger first-party medical payments coverage directly to Brochu; there is nothing about Brochu's allegations that would separately trigger any duty by State Farm to defend or indemnify an insured under the liability portion of the policies (Coverage L).").

[175] Dkt. 44 at 9–10. Brochu's remaining arguments concern the definition of insured under subsection c.; specifically that State Farm owes a duty to defend and indemnify under Coverage L to an individual who qualifies as an insured under subsection c., in addition to being liable for medical payments under Coverage M. *Id.* at 11–16. The Court notes that it has held in this Order that State Farm owes a duty to defend and indemnify an insured who qualifies under subsection c. *See supra* Section IV.A.4.

[176] *See* Dkt. 44-2 at 15; Dkt. 44-3 at 23.

which this coverage applies, caused by an **occurrence**."[177] Were the Court to conclude that Coverage M additionally provides a duty to defend, such an interpretation would render Coverage L—which defines the scope of State Farm's duty to defend and indemnify—useless or inexplicable. "[A] Court strives to give all provisions a meaning, and one interpretation that preserves all provisions is preferable to another that leaves a portion useless or inexplicable."[178] Thus, consideration of other provisions in the Policies additionally leads the Court to conclude that Coverage M does not give rise to a duty to defend or indemnify.

Accordingly, the Court **GRANTS** summary judgment as to State Farm's claim that Coverage M does not otherwise give rise to a duty to defend or indemnify Hannah.

### *C. Whether State Farm is Estopped From Denying a Duty to Defend Hannah*

Brochu moves for summary judgment that State Farm should be estopped from denying its duty to defend Hannah.[179] Although Brochu acknowledges that State Farm reserved rights to challenge its duty of defense, Brochu "appeals to the conscience of th[e] Court to prevent injustice by precluding S[tate Farm] from asserting a position inconsistent with a position previously taken by it."[180] In both his Motion for Summary Judgment and Reply, Brochu points out that State Farm has already appointed counsel for Hannah in the underlying state court litigation.[181]

---

177 Dkt. 44-2 at 15 (emphasis original); Dkt. 44-3 at 23 (emphasis original).

178 *Copper River Seafoods, Inc. v. Chubb Custom Ins.*, 3:16-cv-00039 TMB, 2018 WL 6220064, at *6 (D. Alaska Sept. 19, 2018) (citing *Modern Const.*, 556 P.2d at 530).

179 Dkt. 47 at 9. *See also* Dkt. 43 at 6, n.28.

180 *Id.*

181 *See id.*; Dkt. 58 at 8.

Brochu's estoppel arguments are without merit. It is undisputed that State Farm reserved its right to challenge its duty to defend Hannah in a separate litigation. Brochu cites to no case law—and the Court can find none—where it would be appropriate to estop an insurer from discontinuing its defense where (1) a court has determined that no duty to defend exists and (2) the insurer has expressly reserved rights to challenge such defense. Indeed, a contrary result would weaken Alaska's policy of encouraging insurers to provide a defense in broader circumstances that may fall outside the scope of liability coverage;[182] if insurers were estopped from denying defense coverage at a later time, insurers would be more cautious in initially providing such defense to insureds because those insurers would then be bound to continue that defense coverage even if later found to have no contractual obligation to do so. The Court therefore rejects Brochu's estoppel arguments regarding State Farm's duty to defend Hannah.[183]

Accordingly, the Court **DENIES** summary judgment on Brochu's claim that State Farm should be estopped from denying a defense to Hannah.

---

[182] *See e.g. Afcan*, 595 P.2d at 645 ("Depending upon the nature of the claim against the insured, the insurer may have an obligation to defend although it has no ultimate liability under the policy."); *CHI of Alaska, Inc. v. Employers Reinsurance Corp.*, 844 P.2d 1113, 1115 (Alaska 1993) ("The insurer may wish to preserve its policy defenses and still provide a defense to the insured . . . . The insurer can preserve these options by defending the insured under a reservation of rights to later disclaim coverage if the reservation of rights is acquiesced in by the insured.").

[183] The Court also notes the unusual posture of Brochu's estoppel argument. Brochu—who is the underlying plaintiff in the state tort litigation—is raising an estoppel argument on behalf of Hannah—who is the underlying defendant in the same action. Hannah is a party to this litigation—in fact, he is one of the named Defendants. Hannah could have filed a motion, response, or reply to any of the summary judgment briefing, including Brochu's estoppel arguments, but declined to do so. His counsel was also present at Oral Argument on July 17, 2019, and declined to participate or engage in any argument, including the estoppel argument. *See* Dkt. 64.

*D. Whether Brochu is Entitled to or Precluded From Medical Payments Under Coverage M*

Finally, Brochu also moves for summary judgment that he is entitled to medical payments under Coverage M of the Renters Policy.[184] Brochu argues that he is entitled to medical payments because Hannah is a "residence employee" as defined by the Renters Policy; in other words, Brochu contends that Hannah is a "residence employee" because Hannah was living at E-Millman's residence and performed maintenance and watched her dogs in lieu or paying rent.[185]

State Farm takes two conflicting positions on whether the Court can appropriately grant summary judgment on Hannah's status as a "residence employee." In State Farm's Motion for Summary Judgment, State Farm concedes that "[t]here are a number of contested factual questions which exist and will need to be resolved before determining whether any of these Coverage M provisions apply."[186] However, State Farm reiterates that the "residence employee" issue only relates to whether there is a duty to provide first-party medical payments coverage to Brochu, and that "there is nothing about Brochu's allegations that would separately trigger any duty by State Farm to defend or indemnify an insured under the liability portion of the policies (Coverage L)."[187]

Despite this prior acknowledgment of disputed facts, State Farm's later filed combined Opposition and Reply argues that Brochu is not entitled to medical payments as a matter of law under the Policies. State Farm highlights Brochu's concession that the medical payments are

---

[184] *See* Dkt. 44 at 9. Brochu concedes that he is not entitled to medical payments under Coverage M of the Homeowners Policy. *See id.*

[185] *Id.* at 9–10.

[186] Dkt. 43 at 12.

[187] *Id.*

precluded under the Homeowners Policy.[188] And, significantly, State Farm argues both that the Property was not the "insured location" or "residence premises" as defined under the Renters Policy, and that Hannah does not qualify as a "residence employee" after consideration of the evidence in the record.[189]

The Court need not reach the merits of this argument because the question of whether Hannah is a residence employee or whether Brochu is entitled to medical payments under Coverage M is not properly before the Court. It is axiomatic that "allegations in the complaint 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"[190] Ninth Circuit authority "makes clear that where . . . the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court."[191] "Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings."[192]

State Farm's Complaint lacks any factual allegations or a request for declaratory judgment on whether Brochu is entitled to medical payments under Coverage M. State Farm initiated this declaratory judgment action seeking to establish the scope of its duty to defend and indemnify Hannah in the underlying state tort action.[193] The Court has now so ruled on defining the scope of

---

[188] Dkt. 56 at 11.

[189] *Id.* at 12–13.

[190] *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968 (9th Cir. 2006) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)).

[191] *Navajo Nation v. U.S. Forest Service*, 545 F.3d 1058, 1080 (9th Cir. 2008).

[192] *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) (quoting *Fleiming v. Lind-Waldock & Co.*, 922 F.2d 20, 24 (1st Cir. 1990)).

[193] *See* Dkt. 1.

State Farm's duties.[194] Nowhere in the Complaint does State Farm request declaratory judgment on whether Brochu is entitled to medical payments under Coverage M. Indeed, Brochu is not a named defendant in the Complaint, and is only present in this litigation after successfully intervening in the matter. Thus, to the extent that State Farm is seeking summary judgment on an issue relating to Brochu's entitlement to medical payments under Coverage M, State Farm's request is outside the scope of the Complaint, and the Court does not consider it.

Brochu's Answer is similarly deficient in including any allegations or counterclaims against State Farm regarding any potential medical payments under Coverage M. Indeed, nowhere in Brochu's Answer does he place before the Court—or put State Farm on notice of his intent to raise—the issue of whether State Farm owes Brochu medical payments for the underlying incident. This litigation is a declaratory judgment action initiated by State Farm; there are no claims before the Court concerning State Farm's monetary liability under the Policies to Brochu. Moreover, in light of the Court's former holdings that Hannah does not qualify as an insured, and that no duty to defend or indemnify arises out of Coverage M, the question of whether Hannah qualifies as a "residence employee" is otherwise irrelevant and mooted to the actual claims before the Court—*e.g.*, determining the scope of State Farm's duty to indemnify and defend Hannah.

Accordingly, the Court declines to consider arguments relating to Brochu's entitlement to medical payments under Coverage M and Hannah's potential status as a residence employee, as this issue was not properly raised and these arguments are thus outside of the scope of any pleadings in this matter.

[194] *See supra* Section IV. A.–B.

## V.    CONCLUSION

For the foregoing reasons, State Farm's Motion for Summary Judgment filed at docket 42 is **GRANTED** and Brochu's Cross-Motion for Summary Judgment filed at docket 44 and Motion for Summary Judgment filed at docket 46 are **DENIED**. In light of the holdings of the Order, the parties are **HEREBY ORDERED** to submit a joint status report within **seven days** of the date of this Order detailing any remaining issues and/or plan for resolution of this matter.


IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 26th day of August, 2019.

/s/ *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE